UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- AT LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL ACTION NO. 5:15-cr-48-KKC |
| **Plaintiff,** | |
| V. | **MEMORANDUM** <br> **OPINION AND ORDER** |
| DAVELL LAMONT SMITH and <br> SABRINA R. SPILLMAN, | |
| **Defendants.** | |

This matter is before the Court on Defendant Davell Lamont Smith's and Defendant Sabrina R. Spillman's motions to suppress evidence obtained during several searches. (DE 21; DE 22). The Court held an evidentiary hearing on August 13, 2015. For reasons stated below, the Court will deny Defendants' motions to suppress.

## I.    Background

In 2014 and 2015, the Nicholasville Police Department ("NPD") received multiple complaints of suspicious activity at 114 Honeysuckle Court in Jessamine County. Neighbors described the behavior as being "consistent with drug activity" and as involving "high volumes of traffic resulting in short visits" to the home. (DE 21-1 Mem. in Supp. at 2.) After conducting surveillance to verify the neighbors' assertions, NPD organized, executed, and video recorded two controlled heroin purchases from Defendants at the Honeysuckle residence. (DE 21-1 Mem. in Supp. at 2.) NPD then petitioned the Jessamine County District Court for a warrant to search (1) the premises at 114 Honeysuckle Court; (2) a 2007 Lincoln MKX; (3) a 1995 Chevrolet Tahoe; and (4) the person of both Defendants. (DE 21-2.) NPD Detective Jeff Fryman submitted an affidavit in support of the petition, which Jessamine District Court Judge Bill Oliver approved, issuing the requested warrant February 25, 2015. (DE 21-2, 21-3.)

NPD then proceeded to execute the search warrant. (DE 21-3.) NPD received information that Smith and Spillman were preparing to leave the 114 Honeysuckle Court residence in the Lincoln MKX listed in the search warrant. (DE 21-1.) NPD officers observed Defendants driving the Lincoln and stopped the vehicle at the intersection of Laurel Lane and Ridgewood Drive. (DE 21-1.) The officers then took the Defendants into custody, searched their persons and searched the Lincoln at the scene. (DE 21-1.) A pat down of Defendant Smith revealed a .22 caliber revolver, ammunition, cash, three bags of heroin, empty baggies, and two cell phones. (DE 21-1.) In Defendant Spillman's purse, NPD officers discovered two phones, cash, baggies, and a straw. (DE 21-1.) Spillman also informed the officers that she had a baggie containing crack cocaine in her bra. Inside the Lincoln, NPD officers found a Glock .40 caliber handgun and magazines, two bags of marijuana, two bags of heroin, a scale, and a cell phone. (DE 21-1.)

Other officers proceeded to 114 Honeysuckle Court where they conducted searches of the residence and the Chevrolet Tahoe parked in the driveway. The Tahoe search revealed two cellphones, cash, a large quantity of heroin, and two handguns—a Sig Sauer .45 caliber handgun and a Smith & Wesson handgun with a defaced serial number—in a safe. (DE 21-1, 21-3.) Additional evidence of the charged crimes was found in the residence; however, Defendants only move to suppress evidence recovered as a result of the two vehicle searches and the searches of their persons.

## II.    Discussion

Defendants argue that the searches of their persons and the vehicles listed in the search warrant violated their Fourth Amendment rights and, thus, the evidence seized during these searches must be suppressed. (DE 21-1.) The Defendants claim the affidavit supporting the search warrant failed to establish a nexus connecting Smith, Spillman, and

the vehicles to the alleged criminal activity occurring at 114 Honeysuckle Court. Consequently, the Defendants reason that the affidavit did not provide the probable cause necessary to justify the issued warrant and further, that the affidavit was so deficient that the NPD officers could not have avoided the Fourth Amendment warrant requirement through good-faith reliance. (DE 21-1; DE 22.)

The United States directly refutes both of the Defendants' assertions regarding the adequacy of the affidavit and application of the good-faith exception to the warrant requirement. (DE 23.) Additionally, the Government  asserts that the Defendants' motion should be denied because the search complied with the requirements of the Fourth Amendment and was conducted under circumstances in which a warrantless search is permissible. (DE 23.)

**A. Sufficiency of the Affidavit**

A search warrant may only be issued upon a showing of probable cause. *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008). Probable cause exists when the totality of the circumstances demonstrate a fair probability "that contraband or evidence of a crime will be found in a particular place." *United States v. Greene,* 250 F.3d 471, 478 (6th Cir. 2001) (quoting *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir. 1999)). Our precedents illustrate a preference for search warrants and the safeguard of "scrutiny [by] a neutral magistrate." *United States v. Leon*, 468 U.S. 897, 913 (1984). As such, a magistrate's determination of probable cause must be shown significant deference. *Id.* at 914. Consequently, the Court's evaluation of the Affidavit's adequacy is limited to determining whether, in the totality of the circumstances, Judge Oliver had a "substantial basis for concluding that [these] search[es] would uncover evidence of wrongdoing." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). This inquiry must be conducted in a

3

"realistic and commonsense manner" guided by "practical considerations of everyday life."

*United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). However, when, as here, a

warrant is issued on the basis of an affidavit, the scope of this review is limited to the "four

corners of the affidavit." *Id.*

The principal thrust of the Defendants' argument is that the affidavit failed to

provide a nexus connecting the criminal conduct it describes—the controlled heroin buys—

and most of the places for which the warrant authorized searches—the vehicles and the

defendants' persons. (DE 21-1.) Were the Court's inquiry limited to determining whether

the affidavit *explicitly* provides "cause to believe that the specific things to be searched for

and seized" were on the Defendants' persons or in the vehicles, this deficiency in the

affidavit might be determinative. *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir.

2005). However, the information provided in the affidavit need not be so exacting; the

"nexus can be inferred from the type of crime being investigated, the nature of things to be

seized, the extent of an opportunity to conceal the evidence elsewhere and the normal

inferences that may be drawn." *United States v. Elbe*, 774 F.3d 885, 889–90 (6th Cir. 2014)

(internal quotation marks and citations omitted). The United States contends that such an

inference was available to Judge Oliver based on the affidavit; the Court disagrees. (DE 23.)

The affidavit states that in the twenty-four hours prior to submitting their petition

NPD used a confidential informant "to make two controlled buys for quantities of Heroin

from the above location." (DE 21-2.) The use of the singular "location" here is key because

this sentence is the only place the affidavit could be construed to link narcotics trafficking

to anything other than the 114 Honeysuckle Court residence. Every other factual assertion

is directly tied to the residence alone. (*See, e.g.*, DE 21-2 Def.'s Ex. 2 at 2 ("behavior is

consistent with that of *residence* selling narcotics")(emphasis added).) As written, however,

4

this lone sentence cannot be read as grounds for the inference the United States seeks. Though Defendants' Persons and the two vehicles are listed "above" the information about controlled buys, only the residence is referenced directly above this statement and it is hardly reasonable to infer that a singular "location" intended to reference four separate areas. Had the affidavit offered that two controlled buys of Heroin were made "from the above location[s] [in transactions conducted by the persons to be searched],"this affidavit may have provided enough. That is not the case here.

Though this Court's review is not rigid, only those inferences which can be *reasonably* made from the affidavit can establish probable cause. This affidavit "completely neglect[s] to indicate *why* the affiant believed that" the defendants or the vehicles had any connection with either the residence or the narcotics trafficking described therein. *United States v. Rose*, 714 F.3d 362, 366 (6th Cir. 2013). Consequently, the affidavit failed to provide the probable cause necessary to satisfy the Fourth Amendment warrant requirement. U.S. Const. amend. IV. Yet, this determination does not necessarily mandate suppression of the evidence at issue.

### B. The Good-Faith Exception

Though the affidavit was not sufficient to establish probable cause, the exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897 (1984), could preserve the fruits of these searches. In *Leon*, the Supreme Court held that the exclusionary rule does not bar admission of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently held to be defective. *See Leon*, 468 U.S. at 918–21. However, *Leon*'s good-faith exception does not prevent exclusion in the following four circumstances:

5

> (1) when the issuing judge was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth, in violation of *Franks v. Delaware*, 438 U.S. 154 (1978); (2) when the issuing judge has failed to act in a neutral and detached fashion; (3) when the search-warrant affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) when the warrant is so facially deficient (i.e. in failing to particularize the place to be searched or the items to be seized) that the executing officers could not have reasonably presumed that it was valid.

*See Leon*, 468 U.S. at 923; *see also United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998); *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006). The Defendants rely on the third exception as grounds for avoiding the good-faith exception.

Affidavits that are 'so lacking in indicia of probable cause' have come to be known as 'bare bones' affidavits." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citations omitted). "The bare-bones inquiry requires examination of the affidavit for particularized facts that indicate veracity, reliability, and basis of knowledge and that go beyond bare conclusions and suppositions." *United States v. Rose*, 714 F.3d 362, 367 (6th Cir.) (citing *Laughton*, 409 F.3d at 748), *cert. denied,* 134 S. Ct. 272 (2013). However, "[t]he inquiry into whether an affidavit is so bare bones as to preclude application of the good-faith exception is a less demanding inquiry than the one involved in determining whether an affidavit provides a substantial basis for the magistrate's conclusion of probable cause." *Rose*, 714 F.3d at 367 (citing *Laughton*, 409 F.3d at 748–49). But "a determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit." *Laughton*, 409 F.3d at 751.[1]

---

[1] The Court recognizes that this holding in *Laughton* was modified by the panel in *United States v. Frazier,* 423 F.3d 526 (6th Cir. 2005). In *Frazier,* the Sixth Circuit concluded that "information that was known to the officer and revealed to the issuing [judge]" but not necessarily included within the affidavit could be considered by a court in making a determination under *Leon. Id.* at 535–36. Here, however, the government has presented no evidence showing that information other than what is contained in the affidavit itself was presented to the

6

A review of this Circuit's precedents leads the Court to conclude that the United States cannot avoid exclusion through *Leon*'s good-faith exception. In *Laughton*, a majority of the panel rejected a good-faith argument put forth to justify reliance on an affidavit that claimed "the defendant 'will keep controlled substances in his pants pockets and stashes around his home" without factual support and failed to connect "observed controlled narcotics purchases" with the place to be searched. 409 F.3d at 749. The affidavit here undoubtedly links observed narcotics purchases and other drug activity to the residence, but, as in *Laughton*, there is no link between any incriminating facts and the challenged search locations—the vehicles, and the Defendants' persons.

Moreover, the evidence in this affidavit is weaker than the averments found insufficient to establish a nexus between the evidence sought and the defendant's home in *United States v. McPhearson*. 469 F.3d 518, 526 (6th Cir. 2006). In *McPhearson*, the Government sought to base the requisite connection on the defendant's arrest at his home in possession of crack cocaine. *Id.* The court held this bare fact inadequate to justify good-faith reliance. *Id.* If a (1) homeowner's arrest (2) in their home (3) while in possession of narcotics, cannot be relied on to connect that *home* with narcotics evidence, a (1) drug purchase (2) at a home (3) with no identified owner, cannot connect two *individuals* and two *vehicles* to that purchase.  The affidavit here neither contained facts sufficient to establish probable cause to search the challenged locations, nor incorporated claims which could justify good-faith reliance on the warrant. Thus, the United States cannot avoid suppression through resort to the Fourth Amendment's Warrant Clause.

---

issuing judge. Accordingly, the Court will only consider the information that appears in the affidavit. *See United States v. Bautista*, No. 5:11-CR-42, 2012 WL 1014995, at *3 n.2 (W.D. Ky. Mar. 22, 2012); *United States v. Jefferson*, 717 F. Supp. 2d 790, 803 n.6 (S.D. Ohio 2010).

### C. Validity of the Search if Warrantless

Nevertheless, suppression is not mandated by failure to satisfy the warrant clause, "since the Fourth Amendment prohibits only those searches which are unreasonable." *Marshall v. Nolichuckey Sand Co.*, 606 F.2d 693, 694 (6th Cir. 1979). Searches without valid warrants have been held reasonable under "a few specifically established and well-delineated exceptions." *California v. Acevedo*, 500 U.S. 565, 580 (1991). Relevantly, these exceptions permit (1) warrantless searches of vehicles when the search is supported by probable cause and (2) full searches of persons following a lawful arrest. *Id.*; *United States v. Robinson*, 414 U.S. 218, 235 (1973). For reasons set forth below, the Court finds that all of the challenged searches fall under these exceptions and thus, the evidence procured thereby need not be suppressed.

### 1. Probable Cause

The Court's finding that the affidavit lacked sufficient facts to establish probable cause does not necessitate a finding that probable cause to arrest the Defendants and search their vehicles was lacking. *See, e.g.*, *Pennsylvania v. Lebron*, 518 U.S. 938, 940 (1996) ("If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."); *United States v. Fachini*, 466 F.2d 53, 57 (6th Cir. 1972) ("a showing of probable cause that a felony has been committed has long been deemed sufficient to justify arrest, even if the arrest warrant is invalid"). This is true even though the required factual basis for probable is equally demanding for warrantless police conduct. *Fachini*, 466 F.2d at 57. As previously discussed, probable cause for a search exists "when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *United States v. Greene,* 250 F.3d 471, 478 (6th Cir.

8

2001) (quoting *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir. 1999)). An officer may also make an arrest if they have, "reasonable cause to believe that the person to be arrested has committed a felony." *United States v. Watson*, 423 U.S. 411, 422 (1976).

Here, a thorough investigation revealed that both Defendants were actively engaged in narcotics trafficking. Video recordings of each Defendant conducting an illicit transaction unquestionably provided NPD with probable cause to believe that the Defendants had committed felonies. Thus, their arrests, regardless of the presence of a warrant, were lawful. As such, the contemporaneous searches of the Defendants' persons were also valid as incidental to their arrests. *United States v. Robinson*, 414 U.S. 218, 224 (1973) ("[t]he validity of the search of a person incident to a lawful arrest has been regarded as settled from its first enunciation").

Likewise, the NPD had probable cause to believe there was evidence of narcotics trafficking in both the Lincoln MKX and the Chevrolet Tahoe. The pat-down search of Defendant Smith, which revealed evidence of heroin trafficking, occurred shortly after he was stopped in the Lincoln SUV. NPD also was aware that one of the recordings mentioned above captured the Defendants dealing narcotics from inside the Lincoln while the vehicle sat in the Honeysuckle residence's driveway. Based on this recording, and certainly once the Lincoln search uncovered further evidence, there was probable cause to believe that other vehicles operated by the Defendants and parked at the residence would hold additional contraband. Suppression hearing testimony from NPD Officer Fryman revealed that recent complaints from neighbors placed Defendant Smith inside the Chevrolet Tahoe.

In certain narrow classes of cases, courts have recognized that probable cause, though necessary, may not be sufficient to justify a vehicle search. However, nothing here would places these searches into any of those strictly delimited exceptions.  Nothing was

offered to suggest that either vehicle was used as a residence at a "place regularly used for residential purposes," or that the vehicles were not "readily mobile." *Maryland v. Dyson,* 527 U.S. 465, 467 (1999); *California v. Carney,* 471 U.S. 386, 392 (1985). Under these circumstances, the NPD's searches of the Lincoln and Tahoe were supported by probable cause and thus, satisfy the Fourth Amendment reasonableness requirement.

### 2. Relevance of Arresting/Searching Officer's Subjective Motivations

At the suppression hearing counsel for the Defendants made several attempts to illicit testimony tending to show that the officers believed they were conducting these searches pursuant to a search warrant. Whether that is true or, as the United States has argued, the officers believed other grounds justified these searches, is irrelevant. (DE 23 at 5.) "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). Even if the searching officers believed their search was justified by an invalid warrant it remains lawful "as long as the circumstances, viewed objectively, justify that action." *Scott v. United States*, 436 U.S. 128, 138 (1978). As explained above, the objective circumstances justified the arrests and subsequent searches without reference to the warrant.

### 3. Collective Knowledge

Similarly, defense counsel sought to prove that the NPD officers who actually conducted the arrests and searches had little knowledge of the preceding investigation. Much like the officers' subjective motivations, their personal knowledge of the facts supporting probable cause is "immaterial" because the facts as known to the NPD can be imputed to the arresting and searching officers through the "collective knowledge doctrine." *United States v. Lyons*, 687 F.3d 754, 768 (6th Cir. 2012). When an officer acts at the request of another officer possessing the facts needed to justify that action the collective

10

knowledge doctrine permits the Court to impute "the investigating officer's suspicions onto the responding officer." *Id.* at 766. This doctrine reflects a practical determination that "effective law enforcement cannot be conducted unless police officers can act on directions and information transmitted by one officer to another." *United States v. Hensley*, 469 U.S. 221, 231 (1985). Since the arrests and searches were conducted at the behest of NPD detectives who, as explained above, possessed probable cause to arrest the Defendants and search their vehicles, the collective knowledge doctrine precludes any challenge based on the acting officers' limited information.

### III. Conclusion

The Court finds that suppression is not warranted in this case because, although the challenged warrant was invalid, the arrests and subsequent searches were reasonable under the circumstances. Warrantless vehicle searches and arrests are both permissible when supported by probable cause. The NPD officers who ordered the search possessed sufficient facts to create a reasonable belief that the Defendants had committed felonies and that their vehicles would contain contraband associated with those felonies.

Accordingly, **IT IS ORDERED** that Defendant Davell Lamont Smith's and Defendant Sabrina R. Spillman's motions to suppress evidence obtained during the February 25, 2015 searches (DE 21; DE 22) are **DENIED**.

Dated September 25, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

11